**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **KITBAR ENTERPRISES, LLC,** *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:17-cv-1128** |
| | ) | |
| **LIBERTY INSURANCE** | ) | |
| **UNDERWRITERS, INC.,** | ) | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION</u>

In this diversity insurance coverage dispute, plaintiff Kitbar Enterprises, LLC ("KitBar") alleges a breach of contract claim against defendant Liberty Insurance Underwrites, Inc. ("Liberty"), asserting that Liberty's denial of coverage for a lawsuit against KitBar and its members constitutes a breach of the insurance policy Liberty issued to KitBar. In response, Liberty argues that coverage was properly denied on the basis of KitBar's misrepresentations on its application for a policy which was submitted after KitBar discovered that it was likely to be sued. Liberty also contends that it is entitled to void the Policy based on Virginia law because KitBar made misrepresentations that induced Liberty to provide coverage. KitBar argues not only that the lawsuit is covered by the insurance policy, but also that Liberty has waived these objections to coverage. Finally, Liberty argues KitBar's request for the retention of jurisdiction to pursue a claim of bad faith be denied because there has been no breach of the Policy. At issue, therefore, on cross-motions for summary judgment, are the following four questions:

> (i) whether KitBar's knowing failure to disclose a possible lawsuit in its application for an insurance Policy caused that lawsuit to fall within the Policy's exclusion for undisclosed suits giving rise to coverage;
>
> (ii) whether KitBar's misrepresentations in its insurance application void the Policy;

1

(iii) whether Liberty waived these arguments by failing to reserve its rights or by defending the suit; and

(iv) whether jurisdiction should be retained to allow KitBar to pursue a claim of bad faith denial of coverage.

The matter has been fully briefed and argued and is now ripe for disposition.

# I.

The entry of summary judgment is appropriate only where there are no genuine disputes of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). That is the situation here. That following statement of undisputed material facts is based on the parties' statements of undisputed material facts and their respective responses. [1] The remainder of the record and the parties' statements of additional facts were also scoured for facts that might be viewed as in conflict with the facts stated here.

- Plaintiff, KitBar Enterprises, LLC, is a Virginia limited liability company with its principal place of business in Fairfax County, Virginia. William Bessette and Benjamin Stone formed the business, and during the time period relevant to this lawsuit, Bessette served as KitBar's president and chief operating officer.

- Defendant, Liberty Insurance Underwriters, Inc., is an insurance company organized under Illinois law with its principal place of business in Boston, Massachusetts.

- At the time KitBar was formed, Stone and Bessette were officers of an entity known as 5Stones Holdings, LLC ("5Stones"). 5Stones was involved in the management of restaurants employing the so-called "KitBar concept," a design which placed a bar

---

[1] Pursuant to Local Rule 56(B) and the Rule 16(b) Scheduling Order issued in this case, a motion for summary judgment must contain a separately captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists. *See KitBar Enterprises, LLC, et al. v. Liberty Insurance Underwriters, Inc.*, No. 1:17-cv-1128 (E.D. Va. Oct. 24, 2017) (Order). Neither party complied fully with Local Rule 56(B) and the Scheduling Order. Because the parties submitted cross-motions, some portion of their statements of fact and responses were necessarily duplicative. In its motion for summary judgment, KitBar properly listed in numbered-paragraph form all the material facts it contended were undisputed. Liberty responded to the numbered paragraphs, but also included a lengthy narrative which did not comply with the requirements of the Local Rules. In Liberty's own motion for summary judgment, it made the same mistake. KitBar's response to Liberty's motion for summary judgment included a lengthy section referring to "other undisputed material facts" which also did not comply with the Local Rule or Scheduling Order. Furthermore, both parties could not resist the temptation to include legal argumentation in their responses to the other's enumerated facts, and the inclusion of legal arguments in the enumerated facts did not comply with the Local Rule or Scheduling Order.

around an exposed kitchen and bar area, which allowed the restaurant to combine the roles of bartenders and cooks.

- Stone and Bessette co-owned 5Stones with an individual named Jack Barry. Stone and Bessette had a number of conflicts with Barry and KitBar was formed in large part to push Barry out of the management of the restaurant concept. Barry was ultimately removed as a member of 5Stones and Stone and Bessette transferred 5Stones' assets to KitBar.

- On June 22, 2015, Stone and Bessette received from Barry a copy of a draft complaint and demand letter that asserted claims against KitBar, Stone, and Bessette, and sought money damages.

- Stone and Bessette discussed Barry's draft complaint and demand letter with their counsel on June 22, 2015.

- Bessette admitted in his deposition that he knew that Barry's complaint might give rise to claims under an insurance policy.[2]

- At 5:29 a.m. on the morning of June 23, 2015, after reviewing the Barry complaint, Bessette sent an email with the subject line "DO Insurance" asking "is the policy active? For Kitbar Enterprises?" Def. Ex. 34. When Bessette was told that the application had not been completed, Bessette signed the application and backdated his signature to June 13, 2015.

- Bessette, acting on behalf of KitBar, applied for insurance from Liberty on June 23, 2015 by submitting an Application with his signature to KitBar's insurance agent. Bessette dated his signature June 13, 2015, seeking an effective coverage start date of June 13, 2015.

---

[2] The relevant portion of Bessette's deposition testimony is excerpted here:

> Q. So here is my question. As of June 23rd 2015 --
> A. Correct.
> Q. -- you had knowledge, did you not, of facts or circumstances which could reasonably be expected to give rise to a claim under the proposed policy?
> A. Did I have knowledge?
> Q. Yes.
> A. I had a draft, yes.
> Q. And to be clear, the answer to my question is simply, yes, you did have knowledge of facts and circumstances --
> A. On June 23rd, 2015, yes I did. But did I have knowledge on the 13th when it was supposed to be binded [sic] and done, no. And that's what I was told to sign, and HRI sent that in. I did not send that in. They told me that was the appropriate date because of the binding. That's what they said. I didn't send that document in to Liberty.

Bessette Dep. at 116:1-19

- The Application posed a number of questions to KitBar to assess the risk of insuring KitBar, including:

  o "Are there any claims made or now pending against any **insured individual** or **insured entity** proposed for coverage?"
  o "Does any **insured individual** or **insured entity** have any knowledge or information of any facts or circumstances which could reasonably be expected to give rise to a **claim** under the proposed **policy**?

Def. Ex. 36 at 9.

- The application also provided that "any **loss** arising from a matter disclosed or which should have been disclosed under this section 11 of this application [the portion of the application requiring disclosure of possible claims] is excluded from coverage under the **policy**, all without limiting any other remedy available to **Liberty** International Underwriters for non-disclosure." *Id.*

- KitBar responded "no" to both of these questions and did not disclose the Barry complaint or the facts and circumstances at issue in connection with the Barry complaint in response to any of the questions posed in the insurance application, even though KitBar had knowledge of the Barry complaint. *Id.* In signing the application on behalf of KitBar, Bessette declared that the statements and disclosures were true to the best of his "knowledge and belief."[3] *Id.* at 10.

- Business Risk Partners ("BRP"), underwriter for Liberty's policies, agreed on behalf of Liberty to issue the Policy to KitBar with an effective start date of June 13, 2015.

- BRP would not have agreed to issue the Policy had KitBar disclosed the pending Barry claims.

- The Policy was issued to KitBar on June 29, 2015. KitBar was the named insured under the Policy, and Bessette and Stone were both insured persons under the Policy.

- Section 11 of the Policy provides that "[t]he Insureds represent and acknowledge that the statements contained in the [Liberty] Application … are true and (i) the basis of this Policy and are to be considered as constituting a part of this Policy; and (ii) shall be deemed material to the acceptance of the risks or hazards assumed by the insurer under this Policy." Section 11 also provides that if the application contains any statements or representations that are untrue, the Policy "shall be void as to" (1) KitBar if the chief executive officer, chief financial officer, or president of the company knew that the facts in the application were not truthfully disclosed; and (2) any "insured person" (including

---

[3] KitBar disputes this fact on the ground that it had no duty to disclose the Barry complaint. That assertion confuses the legal question of whether KitBar was under a duty to disclose the Barry complaint with the factual question of whether KitBar did disclose the Barry complaint. The undisputed factual record clearly shows that KitBar *did not* disclose the Barry complaint. Whether KitBar needed to disclose the complaint is discussed in more detail below.

Bessette and Stone) who knew the facts that were not truthfully disclosed in the application, regardless of whether that individual knew that the application contained a misrepresentation or omission with respect to those facts.  Def. Ex. 41 at 28.

- In December 2015, KitBar reported the Barry complaint to Liberty.

- After receiving notice of the Barry complaint, Liberty began investigation of the claim and began providing a defense for KitBar.

- On December 14, 2015, Liberty sent a letter to KitBar which reserved all rights with respect to continuing to defend the Barry complaint.  Def. Ex. 43 ("We are currently reviewing this matter and will contact you shortly.  In the interim, we reserve all of Liberty's rights accordingly.").[4]

- Liberty sent a second reservation of rights on October 7, 2016.[5]  Def. Ex. 44.

    o Specifically, the second reservation letter provided that "[p]ending our further investigation, Liberty reserves all rights and defenses under the Policy and at law and equity including the right to deny coverage based on any of the foregoing or any other Policy terms, conditions, exclusions, endorsements, including matters contained in the Application, to the extent that they are found to apply."

- On January 12, 2017, Liberty denied coverage of the Barry complaint based on KitBar, Stone, and Bessette's allegedly false statements and material omissions in the application, specifically the failure to disclose the Barry complaint.  At that point, Liberty ceased defending KitBar in the Barry lawsuit.[6]

- The Barry lawsuit ultimately settled and KitBar sued Liberty for breach of contract based on Liberty's failure to continue defending the Barry suit.

-------

[4] KitBar does not dispute that the December 14, 2015 letter included a reservation of rights, but presents record evidence that Liberty did not re-reserve their rights between the December 14, 2015 letter and the October 7, 2016 letter.  As explained below, the failure to submit a renewed reservation of rights after beginning to defend KitBar is immaterial to the disposition of the issues in this case.

[5] Again, KitBar attempts to dispute this fact by making the legal argument that the letters were not an effective reservation of rights.  That issue is addressed *infra*.

[6] KitBar argues that Liberty's denial of coverage was based on the allegations of the Barry complaint alone and not based on any alleged failure to disclose the Barry complaint.  That is a misrepresentation of the record.  Under the section of the January 12 letter entitled "Full Denial of Coverage," the first line states that "Liberty believes it is entitled to fully deny coverage for the Lawsuit under the Policy based on *false statements/non-disclosures in the Application*."  P. Ex. 35 at 3 (emphasis added).  While it is true that the denial of coverage was based in part on the allegations of the Complaint, those allegations revealed to Liberty that KitBar had known of the Barry complaint before it applied for insurance.  Thus, KitBar has not demonstrated that there is a disputed issue of fact as to the basis on which Liberty denied insurance coverage to KitBar.

## II.

The summary judgment standard is too well-settled to merit extended discussion, and the parties do not dispute this standard.  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56, Fed.R.Civ.P.  It is settled that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. On the other hand, a genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, the party opposing summary judgment may not rest upon mere allegations and denials, and must instead "set forth specific facts showing that there is a genuine issue for trial." *Id.* And "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

## III.

Virginia law governs this case, as neither party disputes that the Policy was delivered in Virginia, and it is well-settled that the law of the place where an insurance contract is "delivered controls issues as to its coverage." *Buchanan v. Doe*, 246 Va. 67, 70 (1993).  It is also settled that "if policy language is clear and unambiguous, [courts] do not apply rules of construction; rather, [courts] give the language its plain and ordinary meaning and enforce the policy as written." *Seabulk Offshore, Ltd. v. American Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004).  On the other hand, "when the policy language is ambiguous and the intentions of the parties cannot be ascertained, the policy must be construed strictly against the insurer and

6

liberally in favor of the insured . . . ." *Id*.  With these principles in mind, analysis now turns to the terms of the Policy.

## A.

Liberty's first argument is that the Barry complaint is excluded from coverage under the Policy based on KitBar's failure to disclose the existence of the Barry complaint and demand letter in its June 23, 2015 insurance application.  Analysis of this claim properly begins with the terms of the Policy and the Application.  The Application requested, as is typical with insurance applications, information regarding any possible litigation risks KitBar and the named insureds faced.  Specifically, section 11 of the Application required KitBar to disclose (i) "any claims made or now pending against any insured individual or insured entity proposed for coverage"; and (ii) "any knowledge or information of any facts or circumstances which could reasonably be expected to give rise to a claim under the proposed policy[.]"  Def. Ex. 36 at 9.  The Application further provides that "any loss arising from a matter disclosed or which should have been disclosed under section 11 of this application is excluded from coverage under the policy[.]"  *Id*. Finally, the Application makes clear that it is incorporated as a provision in any subsequently issued insurance policy.  Def. Ex. 36 at 10 ("if a policy is issued this application will form part of such policy and Liberty will be relying on the completeness and accuracy of the statements and disclosures in this application.").  Thus, section 11 of the Application required KitBar to disclose any knowledge or information of any circumstances that might give rise to a claim under the proposed policy, and any losses arising from matters which should have been disclosed under section 11 are explicitly excluded from coverage.

The undisputed record evidence demonstrates that KitBar knew of the Barry complaint and demand letter before it applied for insurance coverage with Liberty.  On June 22, 2015, the

day before KitBar applied for coverage, Bessette received a draft complaint and demand letter from Barry.  KitBar does not dispute that it received the Barry complaint and a demand letter, and in fact the record shows that KitBar submitted its insurance application to Liberty *because of* the Barry complaint and the desire to insure against any losses that might arise from the anticipated Barry litigation.  Thus, there is no dispute (i) that Bessette and KitBar knew of the Barry litigation as of the date KitBar applied for insurance, (ii) that KitBar therefore had knowledge of circumstances which could reasonably be expected to give rise to a claim under the proposed policy, and (iii) that KitBar did not disclose to Liberty or in the Application the existence of the Barry complaint and demand letter when it sought insurance from Liberty. Thus, under the plain language of the Application and the Policy, the Barry complaint falls squarely within the Application's section 11 exclusion for losses arising from claims that should have been disclosed in the application.

KitBar seeks to avoid this straightforward and reasonable conclusion by arguing that the Application did not require them to disclose the Barry complaint and demand letter.  KitBar's first argument in this regard is that because the Policy's effective coverage date was June 13, 2015 the Application only required disclosure of claims KitBar had knowledge of as of the effective coverage date.  Thus, according to KitBar, KitBar had no duty to disclose its knowledge of the Barry complaint and demand letter.

KitBar's argument does not pass the smile test, and flies in the face not only of the plain language of the Application, but also common sense.  KitBar's representations in the Application were made on June 23, 2015 and its knowledge as of *that date* is what matters for purposes of the Application's disclosure requirements.  Section 11 of the Application is written in the present tense, asking "[d]oes any individual or insured entity have any knowledge" of circumstances

8

giving rise to a claim.  Thus, section 11 is not asking about some unspecified date in the past, it is asking about KitBar's present knowledge of potential claims.  KitBar's reading would add an additional clause to the end: "as of the effective date of the policy."  That language is not present in the Application and there is no reason to read it into the Application.

Furthermore, it defies common sense to believe that the Application required disclosure only of what KitBar knew as of the effective date of the Policy.  The purpose of the Application is to allow Liberty to assess the risk of covering KitBar and to assist Liberty in deciding whether Liberty should issue an insurance policy to KitBar.  Relevant to Liberty's assessment of the risk is whether KitBar is exposed to the risk of litigation, and thus the only sensible reading of the language in the Application is that Liberty sought disclosure of KitBar's knowledge of possible claims as of the date of the Application.

KitBar was seeking to insure against a risk that had already materialized, precisely the kind of risk insurers like Liberty seek to exclude from coverage.  Insurance for a risk already realized is not insurance at all, and KitBar's reading of the Application would grant *carte blanche* to unscrupulous insurance applicants to seek coverage for incidents that have already occurred by backdating the effective insurance date of their policies.  For example, KitBar's argument, if countenanced, would allow an individual to apply for car insurance after he has already crashed his car, and would provide coverage for that crash as long as the applicant requested coverage backdated to commence prior to the date of the accident.  Such a rule would run directly contrary to the purpose of insurance, and is an invitation to rampant insurance fraud.

KitBar's second argument in favor of its reading of the Application is equally unpersuasive.  KitBar argues that the Application's supplemental disclosure provision, requiring insurance applicants to supplement answers with "material changes to the statements and

disclosures in this application between the date of this application and the effective date of any policy bound with Liberty . . ." is controlling and did not compel KitBar to disclose the Barry complaint.  This argument fails from the outset; because there was no gap between the date of application and the effective date of the policy this provision simply does not apply to this case. Section 11 required KitBar to disclose its knowledge at the date of application, and this supplemental disclosure provision would apply only if a gap existed between the date of application and the date of effective coverage.  Here, no such gap exists, and as such the supplemental disclosure provision is not relevant or material to the question of what KitBar was required to disclose when it applied for insurance with Liberty.

Fundamentally, KitBar impermissibly seeks to rewrite the language of the Application. The Application unambiguously required KitBar to disclose any possible claims plaintiff knew of as of the date of the Application, and KitBar indisputably failed to do so.  KitBar's attempt to read limitations into the language of the policy is unavailing, as is KitBar's attempt to distort the supplementation provision to exempt it from making honest disclosures about potential claims. The simple fact is that KitBar and its president knew of the Barry complaint and demand letter on the date it applied for insurance coverage, and KitBar and its president failed to disclose this material fact, intending that any liability related to the Barry complaint would ultimately be borne by Liberty.  Such a result cannot obtain under the plain language of the insurance application, and thus the Barry complaint was properly excluded from coverage and Liberty had no duty to defend KitBar with respect to the Barry complaint.

**B.**

Even assuming, *arguendo*, that section 11 of the Application did not exclude coverage for the Barry litigation, KitBar's breach of contract claim against Liberty would still fail because

KitBar's misrepresentations in the Application rendered the Policy void under Virginia law and the terms of the Policy.  Virginia law requires insurance companies to meet a high bar when seeking to deny coverage to an insured based on a false answer in an insurance application. Virginia Code § 38.2-309 provides that "no statement in an application or in any affidavit made before or after loss under [a policy of insurance] shall bar recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk assumed and was untrue."  The Supreme Court of Virginia has interpreted this provision as allowing an insurer to void a policy if the insurer shows by clear proof that (i) the statement or omission in the application was false; and (ii) the false statement or omission was material to the insurer's decision to undertake the risk and issue the policy.  *Time Ins. Co. v. Bishop*, 245 Va. 48, 52 (1993) (*citing Mutual of Omaha Ins. Co. v. Dingus*, 219 Va. 706, 713 (1979)).  And, where, as here, an applicant for insurance answers questions in an application for insurance "to the best of [its] knowledge and belief," the insurer has the burden of "establishing that [the insured's] false statement was knowingly made." *Time Ins. Co.*, 245 Va. at 52.  The insurer must also show that the false statement was material, and in this respect Virginia law considers a statement material where an insurer's decision to issue the policy if the statement would reasonably influence the insurance company in deciding whether to issue the policy.  *Time Ins. Co.*, 245 Va. at 52.

The undisputed factual record makes clear that KitBar made a material false statement in its application for insurance.  Thus, the undisputed record evidence in this case shows that KitBar, through its members Bessette and Stone, knew of the Barry complaint and demand letter and the possibility of a claim against KitBar because Bessette received and reviewed a copy of the draft Barry complaint, including its demand for money damages, the day before Bessette signed the Liberty insurance application.  Yet, Bessette and Stone failed to disclose this risk in

the Application.  The record also demonstrates that this false statement was plainly material; Liberty's underwriter testified that if he had known of the Barry complaint he would not have issued a Policy to KitBar.  Brickman Dec. at ¶¶21-31.  In addition to the declaration, the underwriter's price quotes to KitBar in June 2015 stated that the quotes were contingent on there being "No Claims/Circumstances in the past 5 years" against KitBar or the insured individuals. Def. Exs. 26, 28.  KitBar presents no record evidence to dispute the materiality of the misstatements and instead relies on its argument that it was not required to disclose the Barry complaint.  As explained *supra*, KitBar was required to disclose the Barry complaint, and KitBar's failure to do so voids the Policy.

## IV.

KitBar also argues that Liberty waived its right to apply the exclusion to the Barry complaint by failing to reserve its rights under the policy.  It is an established rule of Virginia law that "the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded." *Norman v. Ins. Co. of N. Am.*, 218 Va. 718, 728, 239 S.E.2d 902, 908 (1978) (*quoting Sharp v. Richmond Life Ins. Co.*, 212 Va. 229, 233, 183 S.E.2d 132, 135 (1971)).  The only exception is "is where an insurer unconditionally defends an action brought against its insured" and thereby waives the right to exclude coverage under the policy. *Norman*, 218 Va. at 729.  An insurer can waive its right to deny coverage by failing to reserve its rights, or it may reserve its right to deny coverage, but for an insurer's reservation of rights to be effective, it "must be communicated to the insured, must fairly inform him of the insurer's position, and notice thereof must be timely given."  *Id.* at 726.

Liberty made clear throughout its entire course of dealing with KitBar that Liberty reserved its rights under the Policy to decline coverage for the Barry complaint.  In Liberty's

initial letter regarding coverage of the Barry complaint sent in December 2015, Liberty notified KitBar that Liberty was investigating the matter and reserving all of its rights during the investigation.  In January 2016, Liberty began to fulfil its duty to defend KitBar with respect to the Barry lawsuit.  Then, on October 7, 2016, Liberty sent a second reservation of rights stating:

> [p]ending our further investigation, Liberty reserves all rights and defenses under the Policy and at law and equity including the right to deny coverage based on any of the foregoing or any other Policy terms, conditions, exclusions, endorsements, including matters contained in the Application, to the extent that they are found to apply.

Finally, on January 12, 2017, Liberty sent a letter denying KitBar coverage based on misrepresentations in KitBar's insurance application.

The undisputed record evidence clearly demonstrates that Liberty repeatedly reserved its rights under the policy to deny coverage for the Barry complaint.  As of December 2015, Liberty properly and fully reserved its rights to exclude coverage for the Barry complaint pending its investigation.  Again, in October 2016, Liberty properly reserved its rights to exclude coverage.  Then, in January 2017, after discovering coverage had been fraudulently induced, Liberty informed KitBar it was terminating its defense.  The law requires nothing more of Liberty beyond what it did here.

Seeking to avoid this simple conclusion, KitBar argues that Liberty's failure to reserve its rights *yet again* between December 2015 and October 7, 2016 constituted a waiver of its right to apply the policy exclusion.  That argument, not surprisingly, is without any legal support; KitBar cites no case for the proposition that an insurer must repeatedly reserve its rights in every correspondence with its insured, and with good reason, for such a requirement would be nonsensical.  Under KitBar's theory, Liberty would be required to reserve its rights to deny coverage in every communication with KitBar about the Barry complaint.  The law does not

support KitBar's position.  Once an insurance company has reserved its rights it may proceed to defend its insured without prejudicing its later efforts to apply policy exclusions based on the discovery of additional information that shows the insured is not covered by the policy.

KitBar argues in the alternative that Liberty knew of the basis for rescinding its duty to defend as of December 2015 because the Barry complaint included information demonstrating the KitBar knew of a potential claim before the application, and that because Liberty knew of the basis for rescinding coverage, Liberty has waived its right to rescind now.  That argument is meritless.  Liberty did not discover that KitBar knew of the Barry complaint before applying for a policy until well after Liberty began its defense and shortly before the Barry litigation was set to go to trial.  Liberty discovered that KitBar knew of the Barry complaint prior to applying for coverage as a result of new allegations in Barry's Amended Complaint, filed in September 2016. *See* Lohman Dep. at 48:8-49:6.  When Liberty learned that KitBar had misrepresented its knowledge in its insurance application, Liberty's January 12, 2017 letter informed KitBar that Liberty would no longer defend the case.  There is no record evidence that even suggests that Liberty had knowledge of KitBar's misrepresentations as of December 2015.  As such, KitBar's waiver argument fails and Liberty is free to assert the Policy's exclusions as a bar to coverage.

## V.

KitBar also argues that this court should retain jurisdiction to allow KitBar to pursue a claim of bad faith denial of coverage.  Because "[t]here can be no bad faith in refusing to defend where there is no coverage under the policy[,]" KitBar's argument is without merit and jurisdiction will not be retained.  *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 193 (1990).

14

For the foregoing reasons, KitBar's motion for summary judgment must be denied and Liberty's motion for summary judgment must be granted.  A separate Order will issue granting summary judgment in favor of Liberty on count I.

The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 22, 2018

/s/

T. S. Ellis, III
United States District Judge

15